### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HONGWEN REN,**

**Plaintiff,**

-vs-                                                  **Case No.  6:07-cv-790-Orl-19DAB**

**ROBERT S. MUELLER, III, EMILIO T. GONZALEZ, AND EVELYN UPCHURCH,**

**Defendants.**

_____

# ORDER

This case comes before the Court on Defendants Robert S. Muller, III, Emilio T. Gonzalez, and Evelyn Upchurch's Motion To Dismiss Or For Summary Judgment.  (Doc. No. 11, filed Oct. 22, 2007.)  Plaintiff Hongwen Ren has not filed any Response.

### Background

Plaintiff Hongwen Ren is a native and citizen of China currently residing in Orlando, Florida.  (Doc. No. 1 at pp. 2-3, ¶ 5.)  He currently works as a Senior Research Scientist at the University of Central Florida College of Optics and Photonics.  (*Id.*)  Plaintiff's employer filed an I-140 Petition on December 31, 2003 with the United States Citizenship and Immigration Services ("USCIS") for Plaintiff to work in the United States on a permanent basis.  (*Id.*)  Plaintiff subsequently filed an employment-based I-485 Application to adjust his status to a permanent legal resident of the United States which the USCIS received on February 24, 2004.  (*Id.* at pp. 13-15; Doc. No. 11 at p. 1.)  Plaintiff's wife and son are derivative beneficiaries of Plaintiff's Application.  (Doc. No. 1 at pp. 2-3, ¶ 5.)

As part of its security clearance process for I-485 Applications, the USCIS submitted a name check request to the Federal Bureau of Investigations ("FBI") which was received on March 8, 2004. (Doc. No. 1 at p. 24; Doc. No. 11 at p. 1.)  Plaintiff was then fingerprinted on October 26, 2004 and again on April 5, 2006.  (Doc. No. 1 at p. 5, ¶ 14.)  Plaintiff received notice on March 8, 2005 that his I-140 Petition had been approved. (*Id.* at p. 16.)  Adjudication of his I-485 Application, however, remains uncompleted.  (*Id.* at pp. 2-3, ¶ 5.)

Plaintiff contacted the USCIS on four separate occasions during 2005 and 2006, inquiring as to the status of his I-485 Application.  (Doc. No. 1 at pp. 19-22.)  In response, the USCIS sent him letters indicating that processing of his Application was delayed due to security checks.  (*Id.*)  In 2006 and 2007, Plaintiff contacted Senator Bill Nelson and Congressman Tom Feeney about the delay.  (*Id.* at pp. 23-26.)  Both informed Plaintiff that his Application was delayed due to a pending FBI name check.  (*Id.*)  However, the web site for the Texas USCIS Service Center, where Plaintiff filed his application, indicated that the Service Center was "currently processing employment based AOS applications (form I-485) filed on October 14, 2006 . . . ."  (*Id.* at p. 5, ¶ 15.)

On May 10, 2007, over three (3) years after filing his I-485 Application, Plaintiff brought an action in this Court.  (Doc. No. 1.)  Plaintiff brings his claim under the "US Constitution, Mandamus Act (28 U.S.C. § 1361), Declaratory Judgment Act (28 U.S.C. § 2201), and the Administrative Procedures Act (5 U.S.C. § 551 et seq.)."  (*Id.* at p. 1, ¶ 1.)  He seeks, among other things, a writ of mandamus or mandatory injunction compelling Defendants to complete adjudication of Plaintiff's Application for legal permanent resident status.  (*Id.* at p. 1.)

In response, Defendants Robert S. Mueller, III, Emilio T. Gonzalez, and Evelyn Upchurch have filed a Motion to Dismiss or for Summary Judgment.  (Doc. No. 11.)  In this Motion,

Defendants make both facial and factual challenges to the Court's subject matter jurisdiction and also argue that Plaintiff has failed to state a claim upon which relief may be granted.  (*Id.* at pp. 8-12.) In the alternative, Defendants argue that if the Court finds that it has jurisdiction, the Court should grant summary judgment in favor of Defendants.  (*Id.* at pp. 12-15.)

## Standard of Review

### I.     Motion To Dismiss

#### A.     Subject Matter Jurisdiction

Subject matter jurisdiction must be affirmatively shown in the record before considering the merits of any case.  *E.g.*, *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).  The party asserting federal subject matter jurisdiction bears the burden of proving its existence.  *Id.*  In an ordinary civil action, the Federal Rules of Civil Procedure require a party to file "a short and plain statement of the grounds for the court's jurisdiction. . . ."  Fed. R. Civ. P. 8(a)(1).  If the complaint fails to conform to Federal Rule of Civil Procedure 8(a)(1), the defendant can move to dismiss the complaint under Federal Rule of Civil Procedure12(b)(1).  *E.g.*, *Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001); *Anderson v. United States*, 245 F. Supp. 2d 1217, 1221 (M.D. Fla. 2002).

Under Federal Rule of Civil Procedure 12(b)(1), a party may bring either a facial or a factual challenge to a court's subject matter jurisdiction.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  In a facial challenge, a court assumes all of a plaintiff's allegations are true and determines whether a plaintiff has alleged a sufficient basis for subject matter jurisdiction.  *Id*. at 1529.  In a factual challenge, a court must determine if it has power to hear the case.  *Id*.  A court

is not required to assume a plaintiff's allegations are true and is free to weigh the evidence and evaluate the merits of the jurisdictional claims.  *Id.*

### B.      Sufficiency of the Pleadings

For the purposes of a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must view the allegations of the complaint in the light most favorable to the plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences drawn from such pleading.  *E.g.*, *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (abrogated on other grounds).  The Court must limit its consideration to this pleading and the written instruments attached to it as exhibits.  Fed. R. Civ. P. 12(d); *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007).

### II.     Motion for Summary Judgment

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case.  *Hickson Corp.*, 357 F.3d at 1259.  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Id.* at 1260.  A court must decide "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Furthermore, according to Rule 56(e), "If the adverse party does not . . . respond, summary judgment, if appropriate, shall be entered against the adverse party." The Eleventh Circuit Court of Appeals has explained that a district court cannot base the entry of summary judgment "on the mere fact that the motion was unopposed, but rather, must consider the merits of the motion." *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A district court must review all of the documents submitted with the motion for summary judgment and must "ensure that the motion itself is supported by evidentiary materials." *Id.* at 1101-02. If these materials raise a genuine issue of material fact, summary judgment cannot be granted. *Id.* at 1103.

**Analysis**

## I.      Governing Statute

The Immigration and Nationality Act ("INA") allows, among other things, an eligible immigrant already present in the United States to seek an adjustment of immigration status to that of lawful permanent resident of the United States.  8 U.S.C. § 1255(a) (2006).  The relevant provision states:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

*Id.*  The authority for adjustment decisions has been delegated to the Secretary of Homeland Security and in turn to the USCIS.[1]  6 U.S.C. §§ 271(b)(5), 557 (2006); 8 C.F.R. § 245.2(a)(1) (2007).

Certain decisions of the USCIS have been statutorily removed from judicial review through the INA.  For instance, the INA provides in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>
> (i)      any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii)     any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

---

[1]      The Court will therefore refer to the USCIS as the government entity having discretion to adjust immigrant status under the INA.

8 U.S.C. § 1252(a)(2)(B)(ii).   Pursuant to this provision, it is undisputed that courts have no jurisdiction to review the ultimate adjustment decision of the USCIS.   *E.g.*, *Tang v. Chertoff*, 493 F. Supp. 2d 148, 151 (D. Mass. 2007); *Lopez v. Sec'y for the Dep't of Homeland Sec.*, No. 6:07-cv-735-Orl-31KRS, 2007 WL 2728353, at *2 (M.D. Fla. Sept. 17, 2007).   However, district courts are split as to whether this provision precludes review of the pace of adjudication.   *Compare, e.g.*, *Tang*, 493 F. Supp. 2d 148 *with Safadi v. Howard*, 466 F. Supp. 2d 696 (E.D. Va. 2006).[2]   As Judge Stewart in the District of Oregon recognized, "It appears that no federal appellate court has yet directly addressed whether jurisdiction exists to force the USCIS to accelerate the speed at which it processes individual applications for adjustment in status, and the district courts 'are very much split on this matter.'" *Liu v. Chertoff*, No. CV-06-1682-ST, 2007 WL 2435157, at *6 (D. Or. Aug. 29, 2007) (quoting *Sharif v. Chertoff*, 497 F. Supp. 2d 928, 931 (N.D. Ill. 2007)).[3]   This Court must

---

[2]   The reason for this split is that courts disagree whether the Administrative Procedures Act applies to delay by the USCIS in adjudicating adjustment applications.   If the INA does not specify that the authority for deciding whether or not to adjudicate adjustment applications is in the discretion of the USCIS, then the jurisdiction stripping provision does not apply.   If the USCIS in fact has a duty to adjudicate applications and reach a final adjustment decision, then the Administrative Procedures Act applies.   The Act requires that an agency conclude matters presented to it within a reasonable time and gives courts the authority to compel agency action that has been unreasonably delayed.   Therefore, if the Administrative Procedures Act applies, the Court has the authority to review the pace of adjudication.   *See infra* Sections II and III.

[3]   District courts have reached several different conclusions about their jurisdiction to review the pace of adjustment application adjudication.   Some courts have found that the INA specifies that the USCIS has discretion over the entire process of adjustment, including the pace of adjudication; therefore, courts have no jurisdiction to review any part of the process.   *E.g.*, *Orlov v. Howard*, No. 1:07-cv-350(JDB), __ F. Supp. 2d __, 2007 WL 4293490, at **4-7 (D.D.C. Dec. 10, 2007); *Zahani v. Neufeld*, No. 6:05-cv-1857-Orl-18J, 2006 WL 2246211, at *3 (M.D. Fla. June 26, 2006).   Other courts have found that the INA specifies that the USCIS has discretion over only the final adjustment decision and not the pace of adjudication.   *E.g.*, *Liu*

(continued...)

therefore consider: (1) whether the INA precludes judicial review of the decision of the USCIS to adjudicate an adjustment application; and if not (2) whether the Court has jurisdiction to review the pace of adjudication.

## II.     Subject Matter Jurisdiction over the USCIS

### A.     Effect of Jurisdiction Stripping Provision of the INA

The INA states that courts have no jurisdiction to review a "decision or action" that is "specified under [Subchapter II, Chapter 12, Title 8 of the United States Code, Sections 1151 to 1378] to be in the discretion" of the USCIS.  8 U.S.C. § 1252(a)(2)(B)(ii).  Thus, the Court must decide whether the duty to adjudicate an I-485 Application is specified as being in the discretion of the USCIS.  Section 1255(a) grants the USCIS discretion to "adjust[]" the status of an alien "under such regulations as [the agency] may prescribe."  While this Section makes clear that the ultimate adjustment decision is specified to be within the discretion of the USCIS, as well as the regulatory requirements for adjustment, the statute is silent whether the USCIS has similar discretion in deciding if and when to adjudicate adjustment applications.

In determining whether the INA precludes judicial review in this case, the Court bears in mind that there is a strong presumption in favor of judicial review of agency action.  *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 298 & n. 9 (2001).  The United States Supreme

---

[3](...continued)
> *v. Novak*, 509 F. Supp. 2d 1, 6-7 (D.D.C. 2007); *Singh v. Still*, 470 F. Supp. 2d 1064, 1067 & n. 6 (N.D. Cal. 2007); *Yu v. Brown*, 36 F. Supp. 2d 922, 931-33 (D.N.M. 1999); *Dib v. Chertoff*, No. 6:07-cv-98-Orl-31UAM, 2007 WL 2155642, at *2 (M.D. Fla. July 26, 2007).  Still others suggest that the INA grants the USCIS discretion over the pace of adjudication only so long as the delay is not so unreasonable as to be tantamount to a refusal to act.  *E.g.*, *Sharif*, 497 F. Supp. 2d at 934; *Safadi*, 466 F. Supp. 2d at 700-01; *Eldeeb v. Chertoff*, No. 8:07-cv-236-T-17EAJ, 2007 WL 2209231, at **12-13 (M.D. Fla. July 30, 2007).

Court has stated that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).

In interpreting Section 1252(a)(2)(B), Judge Gertner of the District of Massachusetts noted that the title of this Section is "*Denials* of Discretionary Relief," suggesting that judicial review is limited only as to the ultimate adjustment decision. *Tang*, 493 F. Supp. 2d at 152 (emphasis added). Judge Gertner also stated:

> Of course, 8 U.S.C. § 1255(a)'s express grant of discretionary authority to grant or deny adjustment of status implies the process and its sub-decisions. But all of the day to day activities of the USCIS are implied by the grants of authority to ultimately adjudicate immigration matters. The distinction between express and implicit is exactly the line Congress drew when it replaced the simple phrase "discretionary decisions" that it had used in the transitional rules with the much more cumbersome "decisions the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."

*Id.* at 153 n. 2 (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). That is, the use of the word "specified" indicates that a statute must explicitly list a particular discretionary act to remove it from judicial review.[4] Since Section 1255(a) does not explicitly list the decision to adjudicate adjustment

---

[4] *See Zafar v. U. S. Attorney Gen.*, 461 F.3d 1357, 1360-62 (11th Cir. 2006) (finding that Section 1252(a)(2)(B)(ii) did not strip courts of the jurisdiction to review an Immigration Judge's decision to grant or deny a motion to continue a removal hearing because "[t]he discretionary decisions exercised here by the [Immigration Judges] to not continue the removal hearings were not 'specified' under subchapter II of chapter 12, title 8, by Congress"); *id.* at 1362 ("Because denials of motions to continue are not statutorily-proscribed discretionary acts 'specified under this subchapter' to the Attorney General, as enumerated in § 1252(a)(2)(B)(ii), we have jurisdiction to review them."); *Ahmed v. Dep't of Homeland Sec.*, 382 F.3d 383, 387 (7th Cir. 2003) (finding that Section 1252(a)(2)(B)(ii) did not bar review of agency inaction on a visa application because "that statute applies only if there has been an actual discretionary decision either to grant or deny a visa").

applications to be within the discretion of the USCIS, Congress must not have intended this decision to be removed from judicial review.[5]

The Court also must read Section 1252(a)(2)(B)(ii) in light of Section 1252(g), another jurisdiction-stripping provision of the INA.  Section 1252(g) involves the removal process and states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  This provision clearly and explicitly removes the agency's decision whether or not to adjudicate cases from judicial review.  Congress here distinguished the process of adjudication from the ultimate decision and was explicit in removing the entire process from judicial review.  In contrast, Congress remained silent concerning the decision whether to adjudicate applications in Section 1252(a)(2)(B)(ii).  The Court must assume that this was deliberate and that Congress did not intend to remove this decision from judicial review by leaving it entirely in the discretion of the USCIS.

Additionally, federal regulations indicate that the adjudication of adjustment applications is legally required and not purely a matter of agency discretion.  For example, one of the regulations provides: "An applicant or petitioner *shall be sent a written decision* on his or her application, petition, motion, or appeal."  8 C.F.R. § 103.2(b)(19) (emphasis added).  Another provision states: "When a Service officer denies an application or petition . . . the officer *shall explain in writing* the specific reasons for denial."  *Id.* § 103.3(a)(1)(I) (emphasis added); *see also id.* § 245.2(5)(I) ("The

---

[5]     *See Belegradek v. Gonzales*, No. 1:07-cv-589-RWS, __ F. Supp. 2d __, 2007 WL 3091078, at *3 (N.D. Ga. Oct. 18, 2007) ("Here, Defendants have not pointed to any authority specified in 8 U.S.C. §§ 1151-1378 which grants the Attorney General discretion to refuse to process or unreasonably delay the processing of an application to adjust status.").

applicant *shall be notified of the decision* of the director and, if the application is denied, the reasons

for the denial.") (emphasis added); *id.* § 245.2(c) (same).  These sections provide additional support

for the conclusion that the USCIS has a non-discretionary duty to adjudicate applications for

adjustment.  Therefore, while the ultimate *decision of adjustment* is committed to agency discretion

by law, the decision *whether to adjudicate* an application is not.

Finally, sound policy reasons support a finding that the USCIS must adjudicate all properly

submitted adjustment applications, and that the failure to do so is subject to judicial review.

Concluding otherwise would "render toothless all timing restraints, including those imposed by the

APA", and "[s]uch a result would amount to a grant of permission for inaction, and a purposeful

disregard of the potential for abuse thereof, on immigration matters."  *Duan v. Zamberry*, No. 2:06-

cv-1351, 2007 WL 626116, at *3 (W.D. Pa. Feb. 23, 2007).  Such an outcome "does not find support

in the statutory text and, considering the fact that most applicants will be physically present in the

United States, seems antithetical to national security interests." *Toor v. Still*, No. 3:07-cv-645-BZ,

2007 WL 2028407, at *2 (N.D. Cal. July 10, 2007).

In sum, the INA does not specify that the decision whether to adjudicate adjustment

applications is within the discretion of the USCIS; therefore, the jurisdiction stripping provision in

Title 8, Section 1252(a)(2)(B)(ii) of the United States Code does not apply.  Accordingly, the Court

must now consider whether there exists an affirmative, statutory grant of subject matter jurisdiction

to review the reasonableness of the USCIS' delay in adjudicating Plaintiff's adjustment application.

### B.    Statutes Granting Subject Matter Jurisdiction

Plaintiff asserts subject matter jurisdiction under Title 28 of the United States Code, Sections

1331 (federal question jurisdiction), 1361 (mandamus jurisdiction), 1651 (All Writs Act), and 2201

(Declaratory Judgment Act), as well as Title 5, Section 701 (Administrative Procedures Act).  (Doc. No. 1 at p. 2, ¶ 2.)  Neither the Declaratory Judgment Act nor the Administrative Procedure Act provides an independent basis for subject matter jurisdiction.  *Califano*, 430 U.S. at 105-07 (Administrative Procedure Act does not provide an independent basis for subject matter jurisdiction); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) (same for the Declaratory Judgment Act).  Therefore, the Court considers whether it has federal question or mandamus jurisdiction.

### 1.      Federal Question Jurisdiction

Section 1331 of Title 28 grants to federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treatises of the United States."  28 U.S.C. § 1331 (2006).  Plaintiff has alleged a violation of the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 555(b), 706(1) (2006).  Defendants acknowledge that "a federal district court may have federal question jurisdiction under 28 U.S.C. § 1331 over a claim that an agency has violated the APA." (Doc. No. 11 at pp. 12-13) (citing *Califano*, 430 U.S. at 107).  When, as here, a plaintiff seeks a mandatory injunction under the APA, this Court has found that the principles and standards for mandamus jurisdiction apply to determine jurisdiction for the APA claim.  *Gemini Realty, Inc. v. Gonzalez*, No. 6:06-cv-786-Orl-19DAB, 2006 WL 2927562, at *2 (M.D. Fla. Oct. 12, 2006) (citing *Hernandez-Avalos v. Immigration & Naturalization Serv.*, 50 F.3d 842, 844 (10th Cir. 1995)). Therefore, in deciding whether jurisdiction lies to issue a mandatory injunction, this Court must consider whether it has mandamus jurisdiction.

## 2.      Mandamus Jurisdiction

Section 1361 of Title 28 grants to federal district courts original jurisdiction over "any action

in the nature of mandamus to compel an officer or employee of the United States or any agency

thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361 (2006).  The All Writs Act further

provides, "The Supreme Court and all courts established by Act of Congress may issue all writs

necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and

principles of law." 28 U.S.C. § 1651(a) (2006).  Here, Plaintiff seeks a writ of mandamus from the

Court.  As the former Fifth Circuit Court of Appeals explained, "Three elements must exist before

mandamus can issue: (1) the plaintiff must have a clear right to the relief, (2) the defendant must

have a clear duty to act, and (3) no other adequate remedy must be available." *Jones v. Alexander*,

609 F.2d 778, 781 (5th Cir. 1980).[6]

## a.      Duty to Act

As the Court discussed above in Section II.A, codified regulations appear to impose on the

USCIS a legal duty to adjudicate adjustment applications.  The Supreme Court has indicated that

courts should look to "agency regulations that have the force of law" to determine whether agency

action is required by law. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004).  The Court

also stated that an agency may use language in its decisions and promulgations that "creates a

commitment binding on the agency." *Id.* at 71.  Thus, when an agency regulation uses mandatory

language like "shall," a court should find that there is a legal duty to act.  *See id.*; *In re Am. Rivers*

*& Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004) ("[The agency's] insistence that it is not

---

[6]      The Eleventh Circuit Court of Appeals adopted as binding precedent all prior
decisions of the former Fifth Circuit Court of Appeals issued prior to October 1,
1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

obligated to address a petition filed under one of its own regulations allowing requests for discretionary relief . . . is without merit."); *Singh*, 470 F. Supp. 2d at 1067 (noting that the USCIS conceded a mandatory duty to act on adjustment of immigrant status applications). As cited above, regulations governing the USCIS state that "[a]n applicant or petitioner *shall be sent a written decision* on his or her application, petition, motion, or appeal." *E.g.*, 8 C.F.R. § 103.2(b)(19) (emphasis added). The USCIS therefore has a clear, non-discretionary duty to adjudicate applications for adjustment of alien status under its own regulations.

### b.    Right to Relief

Defendants nevertheless argue that Plaintiff does not have a right to relief because agency regulations do not mandate any deadlines for acting on applications and in fact give USCIS the authority to "withhold adjudication" in certain circumstance. (Doc. No. 11 at p. 6) (citing 8 C.F.R. § 103.2(b)(18)). The relevant regulatory provision states:

> A district director may authorize withholding adjudication of a visa petition or other application if the district director determines that an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion, where applicable, in connection with the application or petition, and that the disclosure of information to the applicant or petitioner in connection with the adjudication of the application or petition would prejudice the ongoing investigation. If an investigation has been undertaken and has not been completed within one year of its inception, the district director shall review the matter and determine whether adjudication of the petition or application should be held in abeyance for six months or until the investigation is completed, whichever comes sooner. If, after six months of the district director's determination, the investigation has not been completed, the matter shall be reviewed again by the district director and, if he/she concludes that more time is needed to complete the investigation, adjudication may be held in abeyance for up to another six months. If the investigation is not completed at the end of that time, the matter shall be referred to the regional commissioner, who may authorize that adjudication be held in abeyance for another six months. Thereafter, if the Associate Commissioner, Examinations, with the concurrence of the Associate Commissioner, Enforcement, determines it is necessary to continue to withhold adjudication pending completion of the investigation, he/she shall review that determination every six months.

8 C.F.R. § 103.2(b)(18).  This regulatory provision clearly gives the USCIS discretion to process

applications within a year.[7]  After that time, *if certain conditions are met*, the USCIS may withhold

adjudication for six-month increments.  *See id.*

In the current case, Defendants have not alleged that the conditions of this provision have

been met.  (*See* Doc. No. 11.)  They have offered no evidence that the USCIS District Director,

Regional Commissioner, and the Associate Commissioner, Examinations, with the concurrence of

the Associate Commissioner, Enforcement, have approved withholding adjudication of Plaintiff's

Application in excess of one year.  (*See id.*)  Absent such evidence, the Court cannot find that this

Section applies to the current case.[8]  *See Toor*, 2007 WL 2028407, at *2 (declining to decide the case

under Section 103.2(b)(18) when the USCIS had not alleged that the conditions under that provision

had been met); *Emalky v. Upchurch*, No. 3:06-cv-2359-B, 2007 WL 944330, at *4 (N.D. Tex. Mar.

28, 2007) (same); *see also In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 550 n. 5

(D.C. Cir. 1999) (finding similar provisions permitting an agency to extend deadlines inapplicable

where the agency failed to allege that the required conditions had been met).

The Court therefore must consider whether any other statutory provision requires the USCIS

to adjudicate adjustment applications within a certain time after a year has lapsed.  The APA

includes two provisions on point.  The first states: "With due regard for the convenience and

---

[7]     This Court has previously interpreted this Section to find that there is no clear right
to relief where an application had been pending for less than a year.  *Gemini Realty,
Inc.*, 2006 WL 2927562, at *3.  Thus, a delay of less than a year is not a violation of
federal law, because agency action has not yet been unlawfully withheld or
unreasonably delayed.  *Id.* at *4 (citing 5 U.S.C. 706).

[8]     Furthermore, some courts have held that even where this Section does apply, the
withholding of adjudication is still subject to the reasonable time requirements of the
APA.  *E.g.*, *Duan*, 2007 WL 626116, at *3 n. 2.

necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).  The second provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--(1) compel agency action unlawfully withheld or unreasonably delayed . . . .

*Id.* § 706.  A case from the District of Massachusetts has explained the difference between the statutory terms "unlawfully withheld" and "unreasonably delayed":

> Nor does an agency have sole discretion to define what is a reasonable time under the APA, which would render meaningless § 706(1)'s clearly mandatory language that the "reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." Notably, Congress did not say "agency action unlawfully withheld or delayed," as it could have if it meant to allow judicial review only where agency delay violated a fixed deadline set out in a separate statute or regulation. The deliberate insertion of the word "unreasonably" contemplates that reviewing courts will delve into the question of what is "reasonable" in the pacing of adjudication.

*Tang*, 493 F. Supp. 2d at 155.  Thus, the concept of an unreasonable delay exists separate and distinct from any statutorily imposed deadline.  *Id.*

In sum, under the APA, an agency "shall proceed to conclude a matter presented to it" and must do so "within a reasonable time."  Accordingly, the APA obligates the USCIS to adjudicate adjustment applications in a reasonable time.[9]  Under Section 706, a court *shall* compel agency action unreasonably delayed.  Thus, if the USCIS has unreasonably delayed adjudication of Plaintiff's I-485 Application, then the APA provides Plaintiff with a clear right to relief.

---

[9]   *See In re Am. Rivers & Idaho Rivers United*, 372 F.3d at 419 ("[The agency] is obligated *under the APA* to respond to the [present] petition. . . .  We are not concerned here with the answer [the agency] might ultimately give petitioners; we are reviewing its failure to give them *any* answer for more than six years.").

### c.      **Availability of Other Remedies**

Plaintiff asks the Court to compel the USCIS to adjudicate his I-485 Application.  (Doc. No.

1 at p. 10.)  Plaintiff alleges that he has exhausted all administrative remedies available to him, and

Defendants do not dispute that Plaintiff has done so.  (*Id.* at pp. 5, 8; Doc. No. 11 at pp. 13-14.)

Courts reaching this question have consistently found that there is no adequate alternative remedy

available to immigrants seeking adjudication of their adjustment applications.  *E.g.*, *Konchitsky v.*

*Chertoff*, No. 5:07-cv-294-RMW, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); *Singh*, 470

F. Supp. 2d at 1071-72.  This Court is likewise unable to discern a reasonable alternative and

accordingly finds that Plaintiff has no adequate alternative remedy.

Since Plaintiff has a clear right to relief, Defendant has a clear duty to act, and there are no

adequate alternative remedies available to Plaintiff, the Court has jurisdiction to issue either a writ

of mandamus under Title 28, Section 1361 or a mandatory injunction under APA Section 706(1)

against the USCIS and its officers.

### III.      **Claims Against the FBI**

Defendants urge this Court to consider separately Plaintiff's claims against Defendant

Mueller, the Director of the FBI.  (Doc. No. 11 at pp. 14-15.)  Defendants state, "As the FBI is not

empowered to adjudicate any immigration application, Mr. Ren fails to state a claim against the

agency."  (*Id.* at p. 14.)  In support of their argument, Defendants submit the Declaration of Michael

A. Cannon, Section Chief of the National Name Check Program Section of the FBI.  (Doc. No. 11-

3.)  Mr. Cannon explains how the FBI processes name check requests that it receives from the

USCIS.  (*Id.* at pp. 9-12, ¶¶ 23-30.)  As Judge Whyte of the Northern District of California

explained, "[T]he FBI's involvement in adjudicating I-485 applications arises not by statute or duty

otherwise imposed by law, but by a contract between USCIS and the FBI." *Konchitsky*, 2007 WL 2070325, at *6. Absent a clear duty to Plaintiff, the Court has no mandamus jurisdiction over the FBI. *E.g.*, *Eldeeb*, 2007 WL 2209231, at *22. Absent any legal duty owed to Plaintiff that has been violated, Plaintiff has failed to state a claim under the APA for which relief may be granted. *E.g.*, *id.*; *Konchitsky*, 2007 WL 2070325, at *6 ("[C]ourts squarely addressing the issue of whether they have jurisdiction to compel the FBI to perform name checks in connection with adjustment of status petitions have overwhelmingly concluded that they do not."). Plaintiff has not alleged, and the Court does not find, that the FBI owes any legal duty to Plaintiff. Therefore, Plaintiff's claims against Defendant Mueller of the FBI must be dismissed.[10]

## IV.     Claims Against the USCIS

### A.     Adequacy of Allegations

To state a claim for relief premised on a violation of the APA, a plaintiff must assert that an agency has delayed legally required action for an unreasonable time. *See* 5 U.S.C. § 706(1). In determining whether a delay is reasonable, courts have frequently cited the six factor test developed

---

[10]     In dismissing Plaintiff's claims against the FBI, the Court notes that it has not precluded all available relief. The USCIS has the power to direct the FBI to conduct a name check on an expedited basis. (Doc. No. 11-3 at p. 8, ¶ 19.) Mr. Cannon explained:

> The general exception to the [FBI's] first-in, first-served policy exists when USCIS directs that a name check be handled on an 'expedited' basis. *USCIS determines which name checks are to be expedited based on criteria it determines*. Once designated as an 'expedite,' that name check proceeds to the front of the queue along with other prioritized name check requests, in front of the others waiting to be processed.

(*Id.*) (emphasis added). Therefore, the Court may order relief for Plaintiff against the USCIS Defendants in the form of mandating expedited review.

by the District of Columbia Circuit Court of Appeals in *Telecommunications Research & Action Center v. Federal Communications Commission ("TRAC")*, 750 F.2d 70, 79-80 (D.C. Cir. 1984). The *TRAC* Court noted that "the first stage of judicial inquiry is to consider whether the agency's delay is so egregious as to warrant mandamus." *Id.* at 79.   Then, the Court articulated six factors that should be considering in making this determination:

> (1)    the time agencies take to make decisions must be governed by a "rule of reason";
> (2)    where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3)    delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4)    the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5)    the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6)    the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* at 79-80 (citations omitted).[11]

The reasonableness of the delay is thus a fact-intensive inquiry, and courts have been varied in their determinations of the amount of time that constitutes an unreasonable delay.  *See, e.g.*, *Cao v. Upchurch*, 496 F. Supp. 2d 569, 577 (E.D. Pa. 2007) (four year delay is presumptively unreasonable); *Elkhatib v. Butler*, No. 04-22407-civ, 2005 WL 5226742, at *2 (S.D. Fla. June 6, 2005) (four year delay unreasonable as a matter of law); *Yu*, 36 F. Supp. 2d at 935 (two and a half years is not reasonable); *Paunescu v. Immigration & Naturalization Serv.*, 76 F. Supp. 2d 896, 902-03 (N.D. Ill 1999) (over two years is unreasonable as a matter of law).

---

[11]    The second factor of this six-factor test reinforces Judge Gertner's position that a statutory deadline may, but does not necessarily, determine the reasonableness of a delay.  Even when there is no statutory deadline, the "rule of reason" applies.

In the current case, Plaintiff has demonstrated that his application for adjustment of status has been pending before the USCIS for almost four (4) years.  (Doc. No. 1 at p. 24; Doc. No. 11 at p 1.)  Plaintiff has also demonstrated that he has made several inquiries into the reason for this delay and has received no explanation beyond the fact that his name check with the FBI is still "pending." (Doc. No. 1 at pp. 19-26.)  Therefore, Plaintiff has adequately alleged a claim of unreasonable delay under the APA.

### B.    Propriety of Summary Judgment

Having determined that Plaintiff has adequately stated a claim for relief, the Court must next consider whether Defendants are entitled to summary judgment on Plaintiff's claim.  Defendants have provided no specific reason for the delay of Plaintiff's adjudication.  Instead, Defendants have offered the boilerplate declaration of Mr. Cannon that describes at length the backlog in the FBI and the general problem of increased security clearance procedures in the post-9/11 world.  (*See* Doc. No. 11-3.)[12]  However, this does not explain why Plaintiff's Application has now been pending for

---

[12]    Judge Presnell of this District has said of an almost identical affidavit from Mr. Cannon:

> To meet this burden [to demonstrate the reasonableness of the delay in processing an adjustment application], the Defendants merely presented an affidavit filed by Michael Cannon, the Section Chief of the National Name Check Program Section at the Headquarters of the FBI. . . .  The affidavit is simply a boiler plate affidavit, strikingly similar to the one filed by the Government in *Yong Tang v. Chertoff*, 1:07-cv-1231-NG (D. Mass. 2007) . . . , which recites the name check process and laments the hardships faced by the FBI in processing a large number of name checks with limited resources.  The affidavit contains virtually no information regarding Lopez's application.

*Lopez v. Sec'y for the Dep't of Homeland Sec.*, No. 6:07-cv-735-Orl-31KRS, 2007 WL 3171312, at *1 (M.D. Fla. Oct. 25, 2007).

almost four (4) years.  Absent any compelling explanation for this delay *as it relates to Plaintiff's application*, the Court cannot find the delay reasonable as a matter of law.

Therefore, the Court must deny the USCIS Defendants' Motion for Summary Judgment. Defendants shall file an Answer to Plaintiff's Complaint within ten (10) days from the date of this Order.  Further, the Court finds that an evidentiary hearing is warranted and will schedule a hearing once Defendant's have filed their Answer.[13]

**Conclusion**

Based on the foregoing, Defendants' Motion to Dismiss or for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.  (Doc. No. 11.)  It is **ORDERED** that:

1.    Defendants' Motion to Dismiss Plaintiff's claims against Defendants Gonzalez and Upchurch is **DENIED**.

2.    Defendant's Motion to Dismiss Plaintiff's claims against Defendant Mueller is **GRANTED**.

3.    Defendants' Motion for Summary Judgment on Plaintiff's claims against Defendants Gonzalez and Upchurch is **DENIED**.

4.    Defendants Gonzalez and Upchurch are **ORDERED** to file an Answer to the Complaint within ten (10) days from the date of this Order.

5.    The Court will schedule an **EVIDENTIARY HEARING** as to the reasonableness of Defendants' delay in adjudicating Plaintiff's I-485 Application once Defendants' Answer has been filed.

---

[13]    Defendants concede that courts reaching the reasonableness question have typically "scheduled hearings to determine the reasonableness of Defendants' delay in adjudicating the applications."  (Doc. No. 11 at p. 11, n. 1.)

**DONE** and **ORDERED** in Chambers in Orlando, Florida on January 20 , 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party